HOGAN v. HADZSITS.[1]

1. Limited Partnerships—Renewal Affidavit—Statutory Requirements.

At the expiration of the period covered by articles of special partnership, like articles were signed, reciting that the special partner had "contributed to the capital stock of the firm the sum of $10,000." The affidavit of one of the general partners recited that the special partner had actually, in good faith, contributed such sum in cash to the capital stock. At the expiration of the period covered by the new articles, the firm went out of business, and a sale of the partnership property under a mortgage failed to bring enough to pay unsecured creditors. In an action by a creditor for goods sold to the firm, it was contended that the certificate and affidavit were false, in that they stated the contribution of the special partner to be in cash, whereas it consisted of his interest in the partnership which had expired, and that, in consequence of the alleged false statement, the special partner was liable under 1 How. Stat. § 2349, for all the engagements of the general partners. *Held*, that the execution of the new articles was in effect a renewal of the former partnership in accordance with section 2352, 1 How. Stat., and that the statement in the renewal affidavit should be referred to the time of the formation of the partnership.

2. Same—Withdrawal of Interest—Liability to Creditors.

To render a special partner liable for firm debts on account of his withdrawal of interest or profits, one of the conditions prescribed by 1 How. Stat. § 2355, to wit, the reduction of the capital stock below the sum stated in the certificate, or the insufficiency of the assets to pay the partnership debts, must exist.

Error to Wayne; Frazer, J. Submitted June 9, 1897. Decided July 13, 1897.

*Assumpsit* by Walter G. Hogan against George Hadzsits, Herman Beckmann, and Herman Rohns, formerly

---

[1] Rehearing denied September 23, 1897.

copartners as George Hadzsits & Company, for goods sold and delivered. From a judgment for defendants, plaintiff brings error. Affirmed.

*Bowen, Douglas & Whiting,* for appellant.

*John W. McGrath,* for appellee Rohns.

MOORE, J.    February 4, 1888, the firm of George Hadzsits & Co. was organized. Herman Rohns was the special partner. The other two defendants were the general partners. The special partner contributed to the capital stock of said firm the sum of $10,000 in cash. The partnership was to terminate on the 3d day of February, 1892. There is no question raised as to these papers being properly executed to create a limited partnership. At the expiration of this partnership, like articles of special partnership were signed, reciting that the partnership was to commence on the 4th day of February, 1892, and to terminate February 3, 1896. The articles recited that "said Herman Rohns, special partner as aforesaid, has contributed to the capital stock of said firm the sum of $10,000." These articles of copartnership were acknowledged February 6, 1892, and on the same day there was attached to said articles an affidavit of the general partner Hadzsits, who swore "that the said Herman Rohns, who is therein named as special partner, has actually, in good faith, contributed in cash to the capital stock of said business the sum of $10,000." The record shows that Mr. Rohns did not contribute any cash to the capital stock of said partnership after February 4, 1888. It also shows that February 6, 1892, the excess of the assets of the firm over its liabilities to persons other than the partners was upwards of $34,000, and exclusive of all liabilities, including the liability to the partners, was upwards of $4,000. The contribution of Mr. Rohns to the firm in February, 1892, was his interest then in the firm. The record shows this was worth upwards of $10,000. After February, 1892, Mr. Rohns drew out

of the firm, at intervals, sums of money which amounted, during the four years the partnership continued to exist, to $3,850, under an arrangement between the partners by which he was to be allowed 10 per cent. on the amount of his investment as interest. On the trial the jury found, in answer to a special question submitted to them, that the property of George Hadzsits & Co. was sufficient on the 6th day of February, 1896, to pay the partnership debts. At the expiration of the second partnership, in February, 1896, the firm went out of business, having given chattel mortgages on all its property. These chattel mortgages were foreclosed. The property did not bring enough to pay the unsecured creditors. It was the claim of the defendants that the property was sacrificed at the chattel-mortgage sale. The plaintiff has a claim of about $1,800 against the company, for which he seeks to hold the special partner.

There are two questions involved:

*First.* Does the fact that Mr. Hadzsits stated in his affidavit made February 6, 1892, that Mr. Rohns had contributed in cash to the capital stock $10,000, when the cash was in fact contributed in 1888, make Mr. Rohns a general partner?

*Second.* Was the withdrawal from the firm by Mr. Rohns of sums of money as interest on his investment such a withdrawal of the capital stock as to make Mr. Rohns liable to the plaintiff for the amount of his claim, to the extent of the amount so withdrawn?

As to the first question, the trial judge charged the jury:

"It is a fact under the evidence in the case, and under the certificate filed and signed by the partners, that the amount of capital stock stated in the certificate was $10,000, which was put in by Mr. Rohns, either in money, or in something equivalent to money, which I charge you is a substantial compliance with the law."

As to the second question, he instructed the jury that the capital stock of the company must be kept intact, and left it to the jury to say whether it had been impaired by the withdrawal of the money from the firm by Mr. Rohns.

The appellant insists that the disposition of each of these questions by the trial judge is error. It is said on the part of the appellant that:

"1 How. Stat. § 2344, requires the execution by all the members of a special partnership of a certificate which shall state, among other things, 'the amount of capital stock which each special partner shall have contributed to the common stock.' Section 2346 requires that the certificate shall be filed with the clerk of the county in which the principal place of business of the partnership is to be situated. Section 2348 provides that, at the time of filing the certificate and the acknowledgment, an affidavit of one or more of the general partners shall be filed in the county clerk's office, 'stating that the amount in money, or other property at cash value, specified in the certificate to have been contributed by each of the special partners to the common stock, has been actually, and in good faith, contributed and applied to the same.' Section 2349 provides: 'No such partnership shall be deemed to have been formed until such certificate, acknowledgment, and affidavit shall have been filed as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners.' The testimony shows that, to the capital stock of the partnership which was in existence when plaintiff's assignors sold the goods on which this action is based, the special partner, Rohns, had not in good faith contributed in cash the sum of $10,000. He contributed his interest in the partnership which had expired on February 3, 1892,—an interest the value of which was entirely problematical. It might or might not have been of substantial value, and whether it was or not could only have been ascertained after payment of the partnership debts, and a sale of the excess of the assets, if any excess there was."

It is the contention that the statement made in the affidavit that Rohns had contributed in cash to the capital stock of the company $10,000 was not true; that the statute must be strictly followed, and the statutory result of the false statement is that Rohns is liable as a general partner for all the partnership engagements; citing Bates, Lim. Partn. pp. 56, 60, 61; *Pierce* v. *Bryant*, 5 Allen, 91;

*Haviland* v. *Chace*, 39 Barb. 283; *Haggerty* v. *Foster*, 103 Mass. 17; *Richardson* v. *Hogg*, 38 Pa. St. 153; *Eliot* v. *Himrod*, 108 Pa. St. 578; *Vanhorn* v. *Corcoran*, 127 Pa. St. 265; *Haslet* v. *Kent*, 160 Pa. St. 85; *Durant* v. *Abendroth*, 69 N. Y. 151 (25 Am. Rep. 158); *First Nat. Bank* v. *Huber*, 75 Hun, 80.

These cases undoubtedly hold that contributions of United States bonds, or of promissory notes or acceptances, or of a stock of goods, or of the property or assets of another partnership, are not to be regarded as payments in cash, in the formation of limited partnerships. Many of these decisions were in States which require the contribution to the capital stock made by the special partner to be made in cash, while in our State the contribution may be made in cash, or other property at cash value. We do not think, however, a fair interpretation of this record will show that what was attempted to be done, or what was in fact done, was the creation of an original limited partnership. It was rather the renewal for another period of four years of a limited partnership then in existence; continuing the same business with the same partners and with the same assets which belonged to the firm at the expiration of the term for which the original articles of partnership provided. Section 2352, 1 How. Stat., provides for the renewal or continuance of such partnerships, and that "a certificate shall be made, acknowledged, recorded, and published in the like manner as is provided in this chapter for the formation of limited partnerships," etc. It is unfortunate, perhaps, that the statute does not provide just what this certificate shall contain. In Bates, Lim. Partn. § 122, it is said:

"Considering how utterly inadequate in its instructions this section of the statute is [he is discussing statutes of similar import to ours], it is astonishing that there have been no more decisions upon it. The statute requires the renewal to be certified as in the original formation. As the certificate of formation certified a cash contribution, or in specific articles at a valuation, it is obvious that a literal compliance with the statute is impossible, and no instructions are given to guide us."

If there cannot be a literal compliance with the statute, is it just to say that, if there has been a substantial compliance with the statute, and an attempt, in good faith, to comply with its terms, the special partner shall be made a general one because the impossible was not done?

"The difficulty is to know how minute must be the information to be contained in these documents. A going business is often not susceptible of exact estimate as to its own standing, capital, etc. Its standing of one day is not its standing of the next day, not only because new contracts may be made and old ones completed, and new debtors and creditors created, but because the ebb and flow of markets make the value of the stock a constantly fluctuating amount; and unseen changes in the ability and solvency of those indebted to the firm may affect it to a high degree without any of the partners being at all aware of any change. Moreover, the capital, which originally was cash, is no longer so. It has now become a stock of goods, or improvements, or property and credits. It is perfectly plain that the renewal certificate cannot state that there is a present cash capital, or its accurate value. It would therefore seem that the statute should be construed as allowing a renewal regardless of the condition of the association; that the statutory certificate, record, affidavit, and publication need contain no new matter not in the original certificate, except the statement that the partnership is renewed for a certain further time; and that any other matter analogous to the re-recording of a mortgage of personalty is practically a re-statement of the original facts. Such, judging from the statements of facts in the cases of renewals, had been the practice." Bates, Lim. Partn. § 127.

Doubtless this was the view held by the person who prepared the certificate and affidavit for the purpose of renewing the partnership. We do not think it unreasonable to say that the statute contemplates that the renewal certificate and affidavit are to be read in connection with the original certificate and affidavit. If this is done, no one can be misled. It would appear from such a reading that the limited partnership was created in 1888; that at that time Mr. Rohns contributed in cash to the capital stock of the company $10,000; and that four years later the limited

partnership was continued for another four years. We have not overlooked the decision of *Haddock* v. *Grinnell Manfg. Corp.*, 109 Pa. St. 382, which reads:

"When a special partnership is continued or renewed, it must be in the same condition, so far as the special capital is concerned, as when it was originally formed. Such capital must be unimpaired. It must be in such condition as to be available for creditors, and it is the duty of the general partner to furnish this information in his affidavit. If this duty is neglected, the partnership becomes general, and the special partner has no immunity."

The Pennsylvania court held substantially the same doctrine in relation to limited partnership associations, but this court declined to follow that doctrine in the recent cases of *Staver & Abbott Manfg. Co.* v. *Blake*, 111 Mich. 282, and *Rouse, Hazard & Co.* v. *Detroit Cycle Co.*, Id. 251. We think such a construction reads into the statute provisions it does not contain. The court did not err in his disposition of the first question raised.

Counsel for appellant insist that under the provisions of section 2355 the special partner is made liable, to the extent of any unpaid debts, for all sums withdrawn from the firm, and that as the record shows the plaintiff is unpaid, and the special partner withdrew more than the amount of the plaintiff's claim, the judge should have directed a verdict in his favor. The statute provides for liability for interest or profits withdrawn only in case the withdrawal reduces the capital stock below the sum stated in the certificate, or if, at any time during the continuance or at the termination of the partnership, the property or assets shall not be sufficient to pay the partnership debts. Both of these propositions were submitted to the jury, who found that the capital stock had not been impaired, and that at the termination of the partnership there were assets sufficient to pay the partnership debts.

The judgment is affirmed.

LONG, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.