(79 App. Div. 141.)

## LEGGAT v. LEGGAT.

(Supreme Court, Appellate Division, Second Department. January 23, 1903.)

1. DIRECTION OF VERDICT—MOTION BY BOTH PARTIES—EFFECT.

Where, at the close of a case, each party moved for a directed verdict in his favor, and neither requested the submission of any issue to the jury, the decision of the court on the facts had the same effect as a jury verdict.

2. EXCEPTIONS—QUESTIONS RAISED—INTERPRETATION OF STATUTE.

Laws 1897, c. 420, § 6, makes every general partner liable to third persons jointly and severally for all partnership obligations. The court below held that under the statute, proceedings might be had against the executor of a deceased partner without first exhausting the legal remedies against the surviving partner, but plaintiff pleaded and proved facts entitling her to bring the action regardless of such interpretation of the statute, and no testimony of defendant was excluded which would have been admissible had the interpretation been otherwise. *Held*, that the statute was not up for interpretation on exceptions taken in the trial.

3. PARTNERS—ACTION AGAINST EXECUTOR OF DECEASED PARTNER—CONDITION PRECEDENT—EXHAUSTING REMEDIES AGAINST SURVIVING PARTNER.

Recovery of judgment against a surviving partner, and return of execution nulla bona, constitutes an exhaustion of the legal remedies against such partner, and renders competent an action against the executor of a deceased partner, regardless of whether Laws 1897, c. 420, § 6, authorizes an action in the first instance against such executor.

4. SAME—COLLUSION—CREDITOR AND SURVIVING PARTNER.

Proof that the return of nulla bona of an execution against a surviving partner was brought about by collusion of plaintiff and such partner, the sheriff not being included, would not be a good affirmative defense to an action against the executor of a deceased partner, though the statute be considered as not permitting action against the executor until the legal remedies have been exhausted against the surviving partner.

5. SAME—PARTNERSHIP ASSETS—TRANSFER TO CORPORATION—NOVATION.

Though all the assets of a partnership subject to its debts were transferred to a corporation with the knowledge and acquiescence of a creditor, there was no novation, unless the corporation, the creditor being a party to the agreement, bound itself to pay such debts.

6. SAME—PARTNERSHIP OBLIGATION—PAYMENT—PROOF.

Where, in an action against the executor of a deceased partner, there is positive uncontradicted evidence that another partner personally transferred certain realty in payment of one-half of a partnership obligation, proof that the true value of the property was sufficient to discharge the whole debt raises no presumption that such transfer wiped out the debt.

Action by Jeannie Z. Leggat against Marietta Leggat, as executrix of Richard J. Leggat. Verdict for plaintiff. Defendant's exceptions heard in the first instance in the appellate division, and overruled.

¶ 5. See Novation, vol. 37, Cent. Dig. § 7.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Joseph A. Burr, for appellant.
A. D. Kneeland, for respondent.

JENKS, J. The case comes up upon exceptions taken by the defendant, and ordered to be heard in the first instance at the appellate division. The action was brought to recover a balance upon two promissory notes made in 1892 by the copartnership of Leggat Bros. The firm consisted of Andrew R. Leggat and Richard J. Leggat. The latter died in 1899, and this defendant is his executor. The plaintiff alleged that one-half of each note had theretofore been paid by Andrew R. Leggat. She also pleaded that in 1900 she had recovered judgment for the balance of the notes against Andrew R. Leggat, as sole surviving partner; that an execution issued upon said judgment had been returned wholly unsatisfied; that the judgment was wholly unpaid; that Andrew R. Leggat was insolvent; that she had exhausted her legal remedy against him as sole surviving partner; and that the defendant, as executor, had disputed and had rejected her claim upon the notes. Additional to her denials of various allegations of the complaint, the defendant pleaded, inter alia, that the said execution was returned nulla bona by the collusion of the plaintiff and Andrew R. Leggat, and pleaded as a defense that in 1899 Andrew R. Leggat conveyed certain realty, exceeding in value $15,000, to the plaintiff, who, in consideration, applied $6,000, one-half of the amount due on the notes, in part payment of the notes, and that the value of the property thus conveyed was sufficient to discharge the notes. As a further defense, the defendant pleaded that in June, 1900, the corporation of Leggat Bros. was organized under the statutes of Maine; that thereupon all of the assets of the copartnership of Leggat Bros. were transferred to the corporation, subject to the debts and liabilities of the copartnership; that the assets thus transferred were sufficient to meet the debts of the copartnership; and that in May, 1900, the plaintiff had agreed to pursue such assets then held by the corporation. At the trial the plaintiff read in evidence the notes, the judgment roll in the action against Andrew R. Leggat as surviving partner, the execution issued thereunder, the return thereon of nulla bona, and rested. Thereupon the defendant offered testimony, of which a part was excluded under objections. At the close of the case the defendant moved for a direction of a verdict on the ground that the notes had been paid, and the plaintiff moved for a direction in her favor for the amount due upon the notes. The court, under exception, directed a verdict for the plaintiff for the balance of the notes. As no request was made by the defendant for the submission of any specific question of fact to the jury, the decision of the court upon the facts is, in effect, the same as if there had been a verdict by the jury after submission to it. Iron Co. v. Brown, 171 N. Y. 489, 493, 64 N. E. 194, and authorities cited. There was evidence to warrant the direction of the court.

It is insisted that the court erred in law because it agreed with the contention of the learned counsel for the plaintiff that, as the partner-

ship law (section 6, c. 420, Laws 1897) makes every general partner liable to third persons jointly and severally for all of the obligations of the partnership, the plaintiff was under no obligation to proceed against Andrew R. Leggat as the surviving member of the firm; but immediately after the death of Richard J. Leggat, and the issue of letters under his will, she could have presented her claim to his executor for the full amount of the notes, and upon rejection thereof could have forthwith proceeded to enforce the claim against this defendant. Even if we thought the court erred in its interpretation we should not disturb the judgment unless the judgment were in some way based upon this error. I think that the disposition of this case does not require an interpretation of the statute. I may say, however, that although the phraseology of the statute may seem to sustain the contention of the learned counsel for the plaintiff, yet such interpretation is counter to the trend of the decisions of this state. Lawrence v. Trustees, 2 Denio, 577; Voorhis v. Childs' Ex'r, 17 N. Y. 354; Van Riper v. Poppenhausen, 43 N. Y. 68; Pope v. Cole, 55 N. Y. 124, 14 Am. Rep. 198; Harbeck v. Pupin, 123 N. Y. 115, 25 N. E. 311; Hotopp v. Huber, 160 N. Y. 524, 532, 55 N. E. 206. It is true that the revisors in their report to the legislature mark the provision of the statute of 1897 as "new"; but when the statute is presented its purpose should be considered not only upon its naked words, but also in light of the remarks of Woodworth, J., in Grant v. Shurter, 1 Wend. 148:

"In the case of a joint contract, if one of the parties die his executor is at law discharged from liability, and the survivor alone can be sued; and if the executor be sued he may plead the survivorship, or give it in evidence under the general issue; but if the contract be several, or joint and several, the executor of the deceased may be sued at law in a separate action. 1 Chitty, Pl. 37; 2 Burrows, 1190. This doctrine, which allows an action against the executor, is applicable to cases where the contract, by the express assent of the parties, is made joint and several. It does not authorize a creditor to sue the executor or administrator of a deceased partner. I am not aware that any such action has ever been sustained at law. The observations of Lord Mansfield in Rice v. Shute, 5 Burrows, 2612, do not support a contrary doctrine. He says: 'All contracts with partners are joint and several; every partner is liable to pay the whole.' The latter clause explains the meaning of that learned judge: not that you can at law proceed against the executor or administrator of the deceased partner, in the same manner that may be done on a contract made, which is declared to be joint and several, but that each partner is holden to pay the whole debt, and not a portion merely. The remarks of his lordship had reference to the extent of liability of each partner, not to the form of proceeding to be pursued by the creditor. The same remarks would be equally pertinent when applied to a joint demand against two debtors. Each debtor is liable to pay the whole, and in that sense the contract may be said to be joint and several; but it will not be contended that therefore the executor of the deceased debtor is liable in a court of law."

I think that the statute is not up for interpretation, for the following reasons: In the first place, the plaintiff did not rely upon her interpretation to the limitation of either her pleading or her proof; for she pleaded and proved a judgment entered by her against Andrew R. Leggat as the surviving partner, and the return of an execution thereon nulla bona.

In Pope v. Cole, supra, the court, per Grover, J., say:

"It is now said by the counsel for the appellant that the plaintiffs ought to be precluded from this equitable remedy, for the reason that the survivor

had property from which, had the sheriff discovered it, the execution might have been satisfied. But the plaintiffs were not in fault for the failure of the sheriff to discover this property. They had done all that was required of them when they had delivered the execution to the sheriff. It was not their but the duty of the sheriff to ascertain whether the debtor had property to satisfy it; and when the sheriff returned that he had not the legal remedy was exhausted, and the plaintiffs were at liberty to pursue their equitable remedy against the estate of the deceased. * * * The representatives of the estate of the deceased debtor have an adequate remedy against the sheriff in case of a wrongful return of the execution."

In the second place, in view of the pleading and proof which I have stated, even if the learned court did interpret the statute as permitting action in the first instance against this defendant, the correctness of that interpretation is not in question, unless such interpretation moved the court to exclude testimony of the defendant which would have been competent, material, or relevant if the law, despite the statute, required the plaintiff to first exhaust her legal remedy against the surviving partner. Therefore it is but necessary to examine the various rulings of the learned court. The defendant pleaded that the return of the execution "was through collusion on the part of the plaintiff herein and Andrew R. Leggat." But, even if proof of the plea had been admitted and made, that would not avail her. If she had pleaded that at the time of the issue and life of the execution the judgment debtor had assets of the partnership in his hands, and that by collusion of the plaintiff and the sheriff the execution had been returned nulla bona, then she would have pleaded a good affirmative defense (Forbes v. Waller, 25 N. Y. 430, 436), and exclusion of testimony to maintain such plea might have been error, unless, of course, the construction of the statute of 1897 made by plaintiff should be upheld. But, as there is neither pleading nor suggestion of any complicity of the sheriff, I think that proof of his return of the execution nulla bona was sufficient prima facie evidence to establish exhaustion of the legal remedy. Pope v. Cole, supra. The learned court also excluded testimony to show that the bill of sale from the copartnership to the corporation was made subject to all of the debts and liabilities of the copartnership, and that the assets of the firm transferred were at the death of the defendant's testator sufficient and had continued to be sufficient to pay the debts and liabilities of the firm. This was an allegation of the answer, coupled with the further allegation that the transfer from copartnership to corporation was well known to the plaintiff, and was in every way acquiesced in by her. But, if proof of this allegation had been admitted and made, it would not establish, or in itself tend to establish, an extinguishment of the defendant's liability; for there was neither plea nor proffered proof that the corporation bound itself to pay the obligation when it took the assets subject to the debts. If the pleading charged or the proof rejected showed, or tended to show, that the corporation and the copartnership agreed that the corporation should assume and pay the debt, and that the plaintiff was party to such an agreement, then a different question would be before us. But the pleading or the offer of proof fell far short of showing, or tending to show, that there was a new contract between all of the parties, and therefore extinguishment of the old debt. So

the principle of what is sometimes termed novation did not apply. Clark v. Billings, 59 Ind. 509; 1 Pars. Cont. p. 218 et seq. Nor should the defendant be heard to say that the testimony, if admitted and supplemented by other evidence, might have been competent to sustain her case for the reason that her learned counsel, by grace of the court, made full offers of his intended proof, which did not embrace any facts which alone or articulated were evidence of novation.

I fail to see any prejudice to the defendant by the exclusion of a part of the testimony relative to the transfer of certain realty by Andrew R. Leggat to the plaintiff. The learned counsel stated his proposed proof as follows:

"That in the year 1899, just before the sale of the stock on hand of Leggat Bros. 'to the corporation of Leggat Bros., Andrew Leggat conveyed in trust two pieces of property, the equity of which was reasonably worth $32,000, to the plaintiff in this action, and that that conveyance was to satisfy the debts of the old firm of Leggat Bros., and that from that time to the present the said title is still in her name. The Court: You may show payment of these notes, or delivery of property to the plaintiff to pay the notes."

The deeds were thereafter read in evidence. These showed absolute conveyance by Andrew R. Leggat personally and his wife to the plaintiff. Thereafter the learned counsel for the plaintiff objected to certain testimony relative to this realty on the ground that payment had not been pleaded, and upon the admission of the counsel for the defendant that this was so the court sustained the objection under exception. It is alleged that the court erred in exclusion of evidence of payment, and in refusal to permit an amendment of the answer setting up payment. The court was careful to say that if the defendant could make any proof of payment the opportunity ought to be afforded, and that, though it could not permit the amendment expressly pleading payment at that stage, yet it might consider the propriety of withdrawing a juror if the counsel asked it. But the record apprises us of the evidence which the defendant would have introduced upon the question of payment. For in answer to the court's statement that, if proof of payment could be made, there ought to be opportunity for it, the learned counsel for the defendant stated: "I want just the effect of her (the plaintiff's) testimony, that is all." And again, when the court reiterated, that the defendant ought not to be finally foreclosed from such proof, the counsel said: "I have proved it." And once again, when the court suggested the propriety of an application for the withdrawal of a juror, the counsel said: "If I have not proved it, I do not propose to offer anything further on it, but I would like to have that in the answer." The court then said: "You do not propose to offer any further evidence of payment than what is already in the case?" The counsel: "Only what is already in the case." This, however, was followed by the request that they might prove the value of the property transferred by Andrew R. Leggat to be $32,000. The question then is, was the defendant prejudiced, assuming that evidence which the defendant sought to offer to sustain her defense of payment was admissible, or had, perforce of amendment, been made admissible? We know from the record that the court would have had before it the testimony of the plaintiff that she and the

surviving partner had lived in the same house for 27 years, and that this partner had paid off one-half of the notes in suit, some $6,000, by the transfer of certain realty to her; that she considered that she owned this property, and had paid taxes upon it; that she did not think that any one knew what it was worth; that there were two mortgages upon it; that she did not know the amount of those incumbrances; and that an expert valued the property at $32,000. What could this evidence, even if uncontradicted in any part, show, but that Andrew R. Leggat and his wife had personally transferred to the plaintiff certain realty worth $32,000, incumbered with mortgages in an amount not stated, in consideration of the credit of $6,000, one-half of the amount due upon certain promissory notes made by the copartnership composed of himself and the defendant's testator? The defendant received the benefit of this evidence for the reason that the plaintiff admitted such payment, and the verdict directed by the court was for the balance only of the notes. Although the defendant pleaded that "this conveyance was to satisfy the debts of Leggat Bros.," she did not offer any testimony, and upon her reiterated statement she disavowed the purpose or the power to offer any testimony, to support this allegation. The burden was upon her to show this, and the mere proof that an individual conveyed his individual property, to discharge one-half of the debt of a copartnership composed of himself and one other, even though the property were adequate to discharge the whole debt, did not raise the presumptions either that the property was assets of the copartnership, or that it was conveyed to wipe out the entire copartnership debt. And there is no principle of law or of equity which authorizes the court upon such proof to apply the property to that purpose.

I think that the defendant did not offer sufficient evidence to justify a determination that the court erred in not finding that the plaintiff had agreed to proceed against the corporation upon these notes. There was no proof that her attorney had any authority to make the promise. Moreover, if he made it, there was no proof of consideration therefor. He could retract his promise, and the evidence shows that he did retract it.

The exceptions should be overruled, and motion for new trial denied, with costs. The right of the plaintiff to costs and allowance at the trial cannot be passed upon on this appeal, for the reason that the record shows that the right to the certificate was not passed upon by the trial court, but the hearing of the motion for the certificate was deferred until after the decision of this court.

Defendant's exception overruled, and motion for new trial denied, with costs. All concur. GOODRICH, P. J., concurs in result.